JFL: USAO 2010R00096

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. **AW 11 CR 0316** |
| | * | |
| GLORIA EDWARDS, and | * | (Conspiracy, 18 U.S.C. § 371; Forced |
| ALFRED EDWARDS, JR., | * | Labor, 18 U.S.C. § 1589; Document |
| | * | Servitude, 18 U.S.C. § 1592; Harboring |
| Defendants | * | an Alien, 8 U.S.C. § 1324(a)(1)(A); |
| | * | Forfeiture, 18 U.S.C. § 1594(d), |
| | * | 28 U.S.C. § 2461(c)) |
| | * | |

*******

## INDICTMENT

### COUNT ONE
### (Forced Labor Conspiracy)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment:

1. Defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** were married to each other and resided in a single-family house located at 6203 Richmanor Terrace, Upper Marlboro, Maryland.

2. T.E. was a Filipina woman, identified in this Indictment by her initials, whose identity is known to the Grand Jury. T.E. was married to a Filipino man and had eight children.

## The Conspiracy

3. Between in or about October 1998 and in or about December 2009, in the District of Maryland and elsewhere, the defendants,

**GLORIA EDWARDS, and
ALFRED EDWARDS, JR.,**

did knowingly and willfully combine, confederate, conspire and agree with each other and others known and unknown to the Grand Jury to commit offenses against the United States set forth in 18 U.S.C. § 1589, specifically, to provide and obtain the labor and services of T.E. by any one of and by any combination of the following means:

  a. by means of serious harm and threats of serious harm to T.E. and another person;

  b. by means of any scheme, plan, and pattern intended to cause T.E. to believe that, if T.E. did not perform such labor and services, T.E. and another person would suffer serious harm; and

  c. by means of the abuse and threatened abuse of law or legal process.

## Manner and Means of the Conspiracy

4. It was part of the conspiracy that defendant **GLORIA EDWARDS**, together with others known and unknown to the Grand Jury, targeted and recruited T.E. to come to the United States to be the defendants' domestic servant, knowing that T.E. was uneducated, illiterate, impoverished, and in need of employment.

5. It was part of the conspiracy that defendant **GLORIA EDWARDS** and Coconspirator A procured a B1 visa through fraudulent means to bring T.E. to the United States to

work as their domestic servant.

6. It was part of the conspiracy that defendant **GLORIA EDWARDS** enticed T.E. to come to the United States, promising to help her and provide a better life for her children.

7. It was part of the conspiracy that defendant **GLORIA EDWARDS** and Coconspirator A confiscated T.E's passport upon her arrival in the United States.

8. It was part of the conspiracy that defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** kept T.E.'s passport in their possession for approximately ten years and refused T.E.'s request to return it to her.

9. It was part of the conspiracy that the day after T.E. arrived at the residence of defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.**, defendant **GLORIA EDWARDS** informed T.E. that she would earn $50 a month for cooking, cleaning, ironing, gardening, and providing nightly massages to defendant **GLORIA EDWARDS**'s mother.

10. It was part of the conspiracy that defendant **GLORIA EDWARDS** required T.E. to clean house for relatives and neighbors to pay the defendants rent for a small apartment in the Philippines, owned by defendant **GLORIA EDWARDS** and her family, where T.E.'s eight children lived during portions of the conspiracy period.

11. It was part of the conspiracy that defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.**, knowing that T.E. was married to a Filipino national, required T.E. to fraudulently and sequentially marry two men, one of whom was **ALFRED EDWARDS, JR.**'s brother, who suffered from dementia, diabetes, and related conditions during the marriage and required extensive care.

12. It was part of the conspiracy that defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** procured a permanent resident (green) card for T.E. through a fraudulent marriage to defendant **ALFRED EDWARDS, JR.**'s brother and subsequent false representations to immigration authorities, then confiscated T.E.'s permanent resident card and threatened T.E. that if she ran away she would be arrested for abandonment.

13. It was part of the conspiracy that defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** required T.E. to sign a document stating that if T.E. left them, she would have to pay them $20,000, and threatened T.E. that if she left the defendants she would be in trouble.

14. It was part of the conspiracy that defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** told T.E. that they kept guns in the house.

15. It was part of the conspiracy that after T.E. ran away, defendant **ALFRED EDWARDS, JR.** brought T.E. back to the defendants' residence and threatened to shoot her if she ran away again.

16. It was part of the conspiracy that defendant **GLORIA EDWARDS** hit, pinched, and poked T.E. with knives.

17. It was part of the conspiracy that defendant **ALFRED EDWARDS, JR.** often hit his brother, T.E.'s husband, in T.E.'s presence, and thereby intimidated T.E..

18. It was part of the conspiracy that defendant **ALFRED EDWARDS, JR.**, after his brother's death, fondled T.E. in a sexual manner and became angry when T.E. rejected his advances.

19. It was part of the conspiracy that the defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** restricted and monitored T.E.'s freedom of movement to keep her in

their service.

20. It was part of the conspiracy that defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** limited T.E.'s telephone contact with her family in the Philippines by monitoring her calls so that she could not freely discuss her circumstances and by failing to provide phone numbers for her children residing in the Philippines.

21. It was part of the conspiracy that defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** yelled at T.E. and called her demeaning names such as "bitch" and "snake."

22. It was part of the conspiracy that defendants required T.E. to work seven days a week, approximately 13 or more hours a day, for approximately 10 years for the defendants and their neighbors, relatives, and friends for minimal earnings.

## Overt Acts

23. In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, at least one of the defendants committed or caused to be committed at least one of the following overt acts, among others, in the District of Maryland and elsewhere:

A. In or about 1998, defendant **GLORIA EDWARDS**, while in the Philippines, recruited T.E. to come to the United States, promising to pay T.E. good money so she could support her eight children in the Philippines.

B. In or about October 1998, defendant **GLORIA EDWARDS** paid approximately $5,000 to Coconspirator A, whose identity is known to the Grand Jury, to apply for and obtain a B1 visa for T.E. by falsely representing to the United States Embassy that T.E. would be employed as a nanny for Coconspirator A, while knowing that T.E. was coming to the United States to be a domestic servant for defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.**

C. On or about April 21, 1999, defendant **GLORIA EDWARDS** arranged for Coconspirator A to escort T.E. on a flight from the Philippines to California.

D. In or about early May 1999, Coconspirator A escorted T.E. on flights from California to Reagan National Airport.

E. In or about early May 1999, defendant **GLORIA EDWARDS** and Individual 1, a person whose identity is known to the Grand Jury, met T.E. and Coconspirator A at Reagan National Airport, where defendant **GLORIA EDWARDS** displayed a handful of money to T.E. and explained to T.E. that Coconspirator A would receive the money, and Coconspirator A handed T.E.'s passport to defendant **GLORIA EDWARDS**.

F. In or about early May 1999, defendant **GLORIA EDWARDS** and Individual 1 transported T.E. to the defendants' residence in Upper Marlboro, Maryland.

G. In or about early May 1999, after T.E. arrived at the residence of defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.**, the defendants advised T.E. that she would not be needing her passport.

H. In or about early May 1999, defendant **GLORIA EDWARDS** told T.E. that she would earn $50 a month for cooking, cleaning, ironing, gardening, and providing nightly massages to defendant **GLORIA EDWARDS**'s mother.

I. On or about July 14, 1999, shortly before T.E.'s visa was to expire and knowing that T.E. was married to a Filipino national, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** required T.E. to marry Individual 2, whose identity is known to the Grand Jury, although T.E. never lived with Individual 2.

J.      On or about November 20, 2000, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** facilitated T.E.'s divorce from Individual 2, after he failed to appear at an immigration hearing.

K.      On or about December 14, 2000, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** facilitated an arranged and fraudulent marriage between T.E. and defendant **ALFRED EDWARDS, JR.**'s brother, who suffered from dementia, diabetes, and related conditions during the marriage, and required extensive care.

L.      Between in or about early 2000 and in or about 2002, when T.E.'s children lived in an apartment in the Philippines owned by defendant **GLORIA EDWARDS** and her family, defendant **GLORIA EDWARDS** demanded that T.E. compensate her for the cost of the apartment by cleaning house for neighbors and further required that T.E.'s eldest daughter manage the apartment building without being paid.

M.      In or about 2002, defendant **GLORIA EDWARDS** ordered T.E.'s children to vacate the apartment in the Philippines because T.E.'s eldest daughter was dating.

N.      Between in or about 2002 and in or about 2006, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** did not pay T.E. for her work and did not send money to T.E.'s children in the Philippines.

O.      In or about November 2002, after T.E. ran away from the defendants' residence, defendant **ALFRED EDWARDS, JR.** established contact with T.E. and told her that she could be arrested for abandonment of her spouse if she did not return.

P.      In or about November 2002, after T.E. ran away, defendant **ALFRED EDWARDS, JR.** brought her back to the defendants' residence and threatened to shoot T.E. if she ran away again.

Q. Between in or about December 2002 and in or about September 2009, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** periodically mentioned to T.E. that they kept a gun in the house.

R. Between in or about early May 1999 and in or about September 2009, defendant **GLORIA EDWARDS** hit, pinched, and poked T.E. with knives.

S. Between in or about 2002 and in or about 2006, defendant **ALFRED EDWARDS, JR.** often hit his brother, who resided in the defendants' residence and was ill with diabetes and dementia, whenever he soiled himself or unknowingly defecated or urinated without his diaper, or when he talked back.

T. On or about August 16, 2005, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** confiscated T.E.'s permanent resident card and advised T.E. that without the card she would be in the United States illegally.

U. Between in or about 2006 and in or about 2009, when several of T.E.'s children again lived in the apartment in the Philippines owned by defendant **GLORIA EDWARDS** and her family, defendant **GLORIA EDWARDS** again required that T.E. compensate her for the cost of the apartment by cleaning house for neighbors and further required that T.E.'s eldest daughter manage the apartment building without being paid.

V. In or about August 2008, after defendant **ALFRED EDWARDS, JR.'s** brother died, defendant **ALFRED EDWARDS, JR.** fondled T.E.'s buttocks inside her underwear and became angry when she screamed at him to stop.

W. Between in or about November 2002 and in or about December 2009, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** called T.E. "bitch" and other demeaning

names.

X. Between in or about May 1999 and in or about September 2009, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** restricted and monitored T.E.'s freedom of movement.

Y. Between in or about early May 1999 and in or about September 2009, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** limited T.E.'s phone contact with her children in the Philippines by not allowing her to initiate or engage in private phone calls with her children.

Z. Between in or about early May 1999 and in or about September 2009, defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.** required T.E. to work seven days a week, approximately 13 or more hours a day for them, house residents, neighbors, friends, relatives, and David Edwards who they required her to marry, all for minimal earnings.

AA. On or about December 22, 2009, approximately three months after T.E. left the defendants' residence, defendant **GLORIA EDWARDS** spoke to T.E. by telephone and told T.E. multiple times that she was a snake, a cobra, a beast, an idiot, a liar, shameless and a son of a bitch; accused her of stealing defendant **ALFRED EDWARDS, JR.**'s clothes when she left; demanded that T.E. pay her $20,000 for a replacement or she would be in trouble; and stated that if T.E. did not pay, T.E. was "done."

18 U.S.C. § 371

## COUNT TWO
### (Forced Labor and Attempted Forced Labor)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 and 2 of Count One are incorporated here.

2. Between on or about January 6, 2006 and in or about September 2009, in the District of Maryland and elsewhere, the defendants,

**GLORIA EDWARDS, and
ALFRED EDWARDS, JR.**

attempted to and did knowingly provide and obtain the labor and services of T.E. by means of (1) serious harm or threats of serious harm to T.E. or another person; and (2) by means of a scheme, plan, and pattern intended to cause T.E. to believe that, if T.E. did not perform such labor and services, T.E. or another person would suffer serious harm; and (3) by means of the abuse or threatened abuse of law or legal process.

18 U.S.C. §§ 1589, 1594(a)
18 U.S.C. § 2

## COUNT THREE
## (Document Servitude)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 and 2 of Count One are incorporated here.

2. Between on or about January 6, 2006 and in or about September 2009, in the District of Maryland and elsewhere, the defendants,

**GLORIA EDWARDS, and
ALFRED EDWARDS, JR.**

attempted to and did knowingly conceal, remove, confiscate, and possess the actual and purported passport and immigration documents of T.E. in the course of a violation of Title 18, United States Code, Section 1589; with the intent to violate Title 18, United States Code, Section 1589; and to prevent or restrict or attempt to prevent or restrict, without lawfully authority, T.E.'s liberty to move or travel, in order to maintain the labor and services of T.E. when T.E. was a victim of a severe form of trafficking in persons.

18 U.S.C. § 1592(a)
18 U.S.C. § 2

## COUNT FOUR
### (Conspiracy to Harbor For Financial Gain)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 and 2 of Count One are incorporated here.

2. Between in or about early May 1999 and in or about September 2009, in the District of Maryland and elsewhere, the defendants,

**GLORIA EDWARDS, and
ALFRED EDWARDS, JR.**

did knowingly and willfully combine, conspire, and agree together and with others known and unknown to the Grand Jury, to conceal, harbor, and shield from detection T.E., an alien, knowing and in reckless disregard of the fact that T.E. came to, entered, and remained in the United States in violation of law, for the purpose of private financial gain.

2. As part of the conspiracy:

   a. The defendants employed T.E. as a domestic worker between in or about early May 1999 and in or about September 2009, and T.E. was responsible for cleaning the home, preparing the family meals, massaging defendant **GLORIA EDWARDS'** mother, and performing yard work.

   b. T.E. lived and worked in the defendants' residence.

   c. The defendants told T.E. that they would send money to her children in the Philippines.

   d. The defendants sent small amounts of money to T.E.'s children and never paid T.E. directly for approximately ten years' labor and services.

8 U.S.C. §§ 1324(a)(1)(A)(v)(i), 1324(a)(1)(B)(i)

## COUNT FIVE
**(Harboring Domestic Worker for Financial Gain)**

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 and 2 of Count One are incorporated here.

2. Between in or about early May 2001 and in or about September 2009, in the District of Maryland and elsewhere, the defendants,

**GLORIA EDWARDS, and
ALFRED EDWARDS, JR.,**

knowing and in reckless disregard of the fact that T.E., an alien, came to, entered, and remained in the United States in violation of law, did conceal, harbor, and shield T.E. from detection in their residence and elsewhere for the purpose of private financial gain.

8 U.S.C. §§ 1324 (a)(1)(A)(iii), 1324(a)(1)(B)(i)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further charges that:

1. The allegations contained in Counts One through Three of this Indictment are incorporated here for the purpose o alleging forfeitures pursuant to Title 18, United States Code, Section 1594, and Title 28, United States Code, Section 2461(c).

2. Pursuant to Title 18, United States Code, Section 1594, upon conviction of an offense in violation of Title 18, United States Code, Sections 1589 and 1592, the defendants, **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.**, shall forfeit to the United States of America (1) any property, real or personal, used or intended to be used to commit or to facilitate the commission of the offenses; and (2) any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses. The property to be forfeited includes, but is not limited to, the private residence owned by defendants **GLORIA EDWARDS** and **ALFRED EDWARDS, JR.**, located at 6203 Richmanor Terrace, Upper Marlboro, Maryland, 20772.

3. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. Has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

18 U.S.C. § 1594
28 U.S.C. § 2461(c)

*Rod J. Rosenstein*
Rod J. Rosenstein
United States Attorney

*Thomas E. Perez*
Thomas E. Perez
Assistant Attorney General
Civil Rights Division

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

Date: June 6, 2011